**F I L E D**

**UNITED STATES COURT OF APPEALS**

**July 14, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GERONIMO CUEVAS-JUAREZ,

Defendant - Appellant.

No. 04-3114

(D.C. No. 03-CR-10066-02-JTM)

(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **HARTZ**, and **McCONNELL**, Circuit Judges.

A jury convicted Defendant Geronimo Cuevas-Juarez of possessing with intent to distribute approximately 400 pounds of marijuana, conspiracy to possess marijuana with intent to distribute, and interstate travel in aid of racketeering. The district court imposed a sentence of 97 months' imprisonment after finding that he was a leader or organizer in the crime, *see* U.S. Sentencing Guidelines

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Manual (USSG) § 3B1.1(c) (2003), and that he obstructed justice by committing perjury at trial, *see* USSG § 3C1.1. Defendant appeals, arguing that the district court improperly admitted hearsay evidence under the coconspirator exception, Fed. R. Evid. 801(d)(2)(E), and that the two sentencing enhancements both lack evidentiary support and were imposed in violation of the Sixth Amendment as interpreted by *United States v. Booker*, 125 S. Ct. 738 (2005). We have jurisdiction under 28 U.S.C. § 1291. We affirm the convictions and sentence.

## I. BACKGROUND

On March 28, 2003, Kansas Highway Patrol Trooper Terry Kummer stopped Defendant because the recreational vehicle he was driving did not have a license plate. Kummer noticed the smell of raw marijuana when Defendant rolled down his window. Because Defendant did not speak English, Kummer requested permission from the vehicle's other adult occupant, Jasmyn Perez, to enter and search the vehicle. She granted the request. The search uncovered 95 packages of marijuana weighing approximately 400 pounds.

After the vehicle was taken into custody, it was searched and its contents catalogued, but Kummer kept in the back seat of his patrol car a cellular phone found in the vehicle. Perez identified the phone as one given to her for use during the trip. A day or two after the arrest, the phone rang and Kummer answered it. During the conversation, which was not recorded, the caller asked

"where the girl or Geronimo was." R. Vol. III at 425. Kummer, realizing the caller was asking about Defendant and Perez, quickly ended the conversation and set up equipment to record subsequent calls. Several conversations were recorded.

Perez later identified the recorded voice of the caller as that of the "fat guy" (the Caller), who had provided her money to rent the vehicle, purchased the cellular phone for her, and called her on the phone during the trip. Perez also testified that Defendant introduced her to the Caller and the other individuals who planned the trip. There was at least one other caller, but only the Caller's calls were offered into evidence.

At trial Defendant sought to exclude as inadmissible hearsay the evidence of Kummer's conversations with the Caller. Defendant argued that the statements could not be admitted under the coconspirator exception, Fed. R. Evid. 801(d)(2)(E), because the conspiracy failed prior to the statements, and that the statements were not admissible under any other recognized hearsay exceptions. The district court held a hearing prior to trial, *see United States v. James*, 590 F.2d 575 (5th Cir. 1979), and admitted the evidence under the coconspirator exception.

After being convicted Defendant filed two objections to the Presentence Investigation Report (PSR). The first objection challenged the PSR's finding that

Defendant played a managerial or supervisory role in the conspiracy and was thus subject to a sentence enhancement under USSG. § 3B1.1(c). Defendant also objected to the PSR's finding that his sentence should be enhanced for obstruction of justice, *see* USSG § 3C1.1, because he gave false testimony during his trial. The district court overruled both objections. As to the first, the court noted that although Defendant did not meet every characteristic of a supervisor or manager, "there [was] plenty to show in this case that he did, in fact, occupy that position, and I believe the enhancement is appropriate here." R. Vol. IV at 623. The court overruled the second objection on the ground that "[Defendant] lied in a number of ways; . . . he did, in fact, commit perjury during the course of the trial." *Id.* at 625. The court sentenced Defendant to 97 months' imprisonment.

## II. DISCUSSION

### A. Admissibility of the phone conversations

Defendant may be correct that the conversations between Trooper Kummer and the Caller were not in furtherance of an ongoing conspiracy. But we need not resolve that issue, because Defendant has not pointed to any hearsay in those conversations. We may affirm the district court's admission of evidence on any legally correct ground. *United States v. Jackson*, 88 F.3d 845, 847 (10th Cir. 1996).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Fed. R. Evid. 801(a). The rule does not define "assertion," but "[t]he key to the definition is that nothing is an assertion unless intended to be one." Fed. R. Evid. 801(a) cmt. (a).

It is not apparent to us that any portion of the conversations between Kummer and the Caller was "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The only evidence about the conversations mentioned in Defendant's brief on appeal is Kummer's testimony that the Caller asked where "the girl" and "Geronimo" were. Aplt. Br. at 5. According to Defendant, "[t]he mere mention of 'Geronimo' by name was devastating to the defense in this case because it suggested that he had a greater role than that which was admitted." *Id.* at 21. But the Caller's asking the whereabouts of Geronimo and the girl is hardly an assertion, much less an assertion whose truth the prosecution was trying to prove. In a similar context we have said that a question could not "reasonably be construed to be an intended assertion, either express or implied. . . . The mere fact . . . that the declarant conveyed a message with her question does not make the question hearsay." *Jackson*, 88 F.3d at 848. Here, the

-5-

Caller's question about Geronimo's whereabouts could not reasonably be viewed as intended to assert that Geronimo was a coconspirator, even though the question was undoubtedly probative of that fact.

Perhaps some true hearsay appears within the portions of the conversations admitted into evidence at trial. But Defendant has not directed our attention to any; and we suspect that if there was any, it had no impact on the trial. Accordingly, we reject this claim of error.

*B. The sentence enhancements*

Defendant argues that the sentencing enhancements for his role in the crime and obstruction of justice violated his Sixth Amendment rights because the facts supporting them were neither admitted by him nor found by a jury. Because he raises this issue for the first time on appeal, we review for plain error. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). Plain error occurs when (1) the district court committed error, (2) the error was plain, (3) the error affected substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* If all four requirements are met, the reviewing court may exercise its discretion to correct the error. *Id.*

The jury returned a verdict finding Defendant guilty of possessing with intent to distribute approximately 400 pounds of marijuana, conspiracy to possess

marijuana with intent to distribute, and interstate travel in aid of racketeering. The Sentencing Guidelines base-offense level for possession with intent to distribute 400 pounds (about 181 kilograms) of marijuana is 26. *See* USSG § 2D1.1(c)(7). Because Defendant's criminal history category was I, the applicable sentencing range would be 63-78 months' imprisonment. *See* USSG § 5A. Based on its own fact finding as required by the then-mandatory guidelines, the district court then enhanced Defendant's base-offense level two levels for his role in the offense, *see* USSG § 3B1.1(c), and two additional levels for obstructing justice by committing perjury at trial, *see* USSG § 3C1.1. The resulting base-offense level, 30, yields a guidelines sentencing range of 97-121 months. The district court imposed a sentence of 97 months, the bottom of the applicable guidelines range.

It was constitutional error under *Booker* for the district court to sentence Defendant above the guidelines range authorized by the jury-found facts. *United States v. Magallanez*, No. 04-8021, slip. op. at 22 (10th Cir. May 17, 2005). The error is both clear and plain. *Gonzalez-Huerta*, 403 F.3d at 732. But to justify setting aside the sentence, Defendant must also show that the error affected his substantial rights and that the court should exercise its discretion to correct the error because it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

We need not determine whether the error affected Defendant's substantial rights because he fails to establish that failure to notice and correct the error is both particularly egregious and a miscarriage of justice. Post-*Booker* the district court has broad discretion to consider and find facts relevant to sentencing—the difference is that it now holds additional discretion, subject to reasonableness review, to depart from the guidelines sentencing range. *Magallanez*, slip. op. at 21-22. The likelihood that the district court would significantly change Defendant's sentence on remand is a relevant consideration when determining whether imposition of the contested sentence was particularly egregious and a miscarriage of justice. *Id.* at 23-24.

Here, as in *Magallanez*, the record "strongly suggests that even with greater latitude, post-*Booker*, to take the weight of the evidence in support of sentencing enhancements into account, the court would reach the same conclusion regarding" the two enhancements. *Id.* at 24. With respect to the enhancement for Defendant's role in the offense, the district court stated:

> I think there was plenty of testimony during the course of the trial, which it appears to me the jury believed, that [Defendant's] role in this matter was significantly greater than what [he] would have had us believe during his testimony during trial here. It is true that there are some things that one would look at to see if he was a supervisor or manager that might not be present here, but, on the other hand, there's no question but what he did set the transportation schedule; he provided the smuggling vehicle; he physically advised Ms. Perez as to the marijuana drop location; he paid Ms. Ortiz. I think there is

plenty to show in this case that he did, in fact occupy that position and I believe the enhancement is appropriate here.

R. Vol. IV at 623. Although Defendant argues that the facts cited by the court establish only that he was an important or essential figure, not a decision-maker, he could be a manager without being the "kingpin" or "boss." USSG § 3B1.1, cmt. n.4. He clearly performed management functions.

As for the obstruction-of-justice enhancement, the court said:

> Well, having had the benefit of sifting through this trial and hearing all the testimony, as I make my determination, I want to tell you that it's not simply a matter of whether you believe the testimony of one witness and not believe another, but in looking at the entire context of this case and all of the facts that were established, I have concluded that Mr. Juarez lied in a number of ways; that he did, in fact, commit perjury during the course of the trial, and I'm thinking specifically about his denying that he knew Veronica Ortiz, when he claims that he did not know there was marijuana in the vehicle, and yet the trooper said that the smell of raw marijuana was extremely strong when he rolled the window down. He denied owning the Nextel cell phone, yet he had the card in his billfold that had the information about it. And it was just one thing after another. I think Mr. Juarez—certainly the Constitution allows defendants the right not to have to incriminate themselves, but it doesn't give the defendant the right to get on the witness stand and commit perjury. I believe that's exactly what Mr. Juarez did in this case. I have absolutely no hesitation at all in finding that he did, in fact, obstruct justice by lying on the witness stand under oath with respect to virtually everything involving his involvement in this particular offense. Obviously the jury rejected it out of hand as well.

R. Vol. IV at 625-26. Defendant challenges the district court's findings, but the evidence at trial amply supported them.

Moreover, Defendant has not cited nor did we find anything in the record that indicates the district court was inclined to impose a sentence outside the guidelines range. On the contrary, at the sentencing hearing the court stated:

> I've considered the nature and the circumstances of this offense, as well as Mr. Juarez' personal characteristics. I think that a confinement sentence of 97 months on Counts 1 and 2, and 60 months on Count 3, all running concurrently, will address sentencing objectives required by statute.

R. Vol. IV at 621.

Accordingly, "[i]n light of the district court's high degree of confidence in its finding[s] . . ., the lack of any basis in the record to doubt the [court's findings], and the absence of any reason to think the Guidelines range produced an inappropriate sentence under the facts of this case, a remand would be an exercise in futility." *Magallanez*, slip. op. at 25. As in *Magallanez*, we "conclude that [Defendant] has not met his burden of showing that the fairness, integrity, or public reputation of the proceedings would be imperilled by the sentence." *Id*.

## III. CONCLUSION

For the forgoing reasons, we AFFIRM Defendant's conviction and sentence.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge

-10-