OPINION

BRAMMER, Judge.
¶ 1 After a jury trial, appellant Richard Palmer was convicted of possessing nine grams or more of methamphetamine for sale. Palmer admitted having one historical prior felony conviction, and the trial court sentenced him as a category two repetitive offender to a mitigated prison term of 4.5 years. On appeal, Palmer maintains (1) the court erred in allowing inadmissible hearsay evidence over his objection, (2) the admission of hearsay was not harmless, and (3) there was insufficient evidence to support his conviction. For the following reasons, we affirm.
Background
¶ 2 We view the facts, and reasonable inferences from the facts, in the light most favorable to sustaining the jury’s verdict. State v. Haight-Gyuro, 218 Ariz. 356, ¶ 2, 186 P.3d 33, 34 (App.2008). On February 6, 2010, Palmer was taken to the hospital after crashing his motorcycle in a single-vehicle accident. While inventorying Palmer’s possessions, B.C., a hospital employee, found a baggie containing white rocks that resembled “rock candy” and gave it to a police officer. The baggie contained 12.57 grams of methamphetamine.
Discussion
Admission of Hearsay
¶ 3 We review a trial court’s ruling on the admissibility of evidence for an abuse of discretion. Id ¶ 7. In opening statements, the prosecutor told the jury the evidence would show B.C. had “inventorie[d] the things ... brought in” with Palmer, including his “clothing, shoes, wallet, those types of things”; she had found the baggie containing methamphetamine in Palmer’s right front pants’ pocket; and she had given the baggie to a police officer. In contrast, Palmer told the jury the evidence would establish B.C. had found the baggie in a backpack near the door of Palmer’s trauma bay and gave it to hospital security personnel, and two women later “c[a]me up and [went] through the backpack and t[ook] the backpack away.” According to Palmer’s opening statement, the methamphetamine
didn’t come from anybody’s pants. It didn’t come from [Palmer,] and [B.C.] never had a conversation with [him] about the backpack, about who owned it or about this baggie. All she knows is that two women came in and took the backpack away and it’s gone. There’s nothing ... [to] show Mr. Palmer was in possession of any drugs, dangerous or otherwise.
¶ 4 At trial, B.C. testified she had discovered the baggie containing methamphetamine *66 in a backpack that had been transferred from the ambulance that brought Palmer to the hospital to Palmer’s emergency room trauma bay. During cross-examination, defense counsel elicited B.C.’s testimony that the backpack had not been inventoried along with Palmer’s other belongings but had been removed by two women who had come to Palmer’s trauma bay after B.C. had found the baggie of methamphetamine and had given it to the officer.
¶ 5 During redirect examination, the state asked B.C. about the two women who had removed the backpack from the trauma bay and referred her to the transcript of her earlier interview with the state and defense counsel. Palmer’s counsel objected, explaining to the trial court that he was “anticipating ... hearsay,” because the portion of the interview transcript identified had included B.C.’s report of what the women had said. Despite no ruling from the court, the state acknowledged counsel’s concern and the following ensued:
Q.....And going back again, you had told this jury that two women had come in to take the backpack. Did they ask, without telling me what they said, did they ask Mr. Palmer about taking the backpack? A. I can recall they asked, where is your backpack.
Following B.C.’s answer, Palmer renewed his objection, saying “Judge, I would object,” and the court, stating “it’s not offered for the truth of the matter stated,” overruled the objection. B.C. then repeated, “I recall them asking where his backpack was.”
¶ 6 On appeal, Palmer argues the trial court erred in allowing B.C.’s testimony about what the women said before they took the backpack, contending that, although phrased as a question, their words “con-taine[d] an assertion ... that the backpack belonge[d] to Mr. Palmer,” and were “analytically no different than had the women said, ‘We are taking your backpack.’ ” The state responds that Palmer “opened the door” to B.C.’s testimony by asking about the women who removed the backpack from the trauma bay and, therefore, cannot assign error to the admission of their statements;[1] that the evidence was not hearsay because it was offered to explain the backpack’s removal rather than to establish Palmer’s ownership of it; and that, if error occurred, reversal is not required because other independent evidence linked Palmer to the backpack.
¶ 7 The statement the women made was not intended as an assertion and thus was not inadmissible hearsay. Hearsay is “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Ariz. R. Evid. 801(c). A “statement” is further defined as either “an oral or written assertion” or “nonverbal conduct of a person, if it is intended by the person as an assertion.” Ariz. R. Evid. 801(a).[2] “[Wjords or conduct not intended as assertions are not hearsay even when offered as evidence of the declarant’s implicit belief of a fact.” State v. Chavez, 225 Ariz. 442, ¶¶ 8, 9, 239 P.3d 761, 763 (App.2010) (text messages from “prospective buyers [who] wanted to purchase drugs” from defendant admissible “as circumstantial evidence that [defendant] had drags for sale.”).
¶ 8 Like the court in Chavez, we find reference to federal authority instructive. See id. ¶¶7-9. Commenting on Rule 801(a), Fed. R.Evid., the advisory committee explained its intent to “exclude from the operation of the hearsay rale all evidence of conduct, verbal or nonverbal, not intended as an assertion” based on the perceived reliability of unintended communications. Fed.R.Evid. 801(a) advisory committee note. The committee emphasized the “key to the definition [of ‘statement’] is that nothing is an assertion unless intended to be one.” Id. And evidence “the person acted as he did because of his belief in the existence of the condition sought to be proved, from which belief the existence of the condition be inferred,” is not *67 hearsay. Id. The burden is on the party claiming an assertion was intended and “ambiguous and doubtful cases will be resolved ... in favor of admissibility.” Id.
¶ 9 In State v. Carrillo, 156 Ariz. 120, 124, 750 P.2d 878, 882 (App.1987), vacated in part on other grounds, 156 Ariz. 125, 128, 750 P.2d 883, 886 (1988) (granting review only on issues of voluntary confession and improper comment on invocation of rights), the defendant argued statements the deceased victim had made should have been excluded as hearsay. In that case, the victim had spoken on the phone to a friend around the time of death and the friend had heard him say to someone in the background, “Hector, don’t do that now,” or “Hector, we will do that later.” Id. at 121, 750 P.2d 878, 750 P.2d at 879. The remark “[wa]s probative because it show[ed] that a person named Hector was in [the vietimj’s home at that time, but [the victim] was not intending to assert anything by making the statement.” Id. at 124, 750 P.2d at 882. Therefore, the statement was “not hearsay at all” and was properly admits ted. Id.
¶ 10 Here, as B.C. testified, two women appeared at Palmer’s trauma bay, and asked where his backpack was. At that time no backpack as yet had been identified. They then left with the backpack. This testimony suggested the women “acted as [they] did because of [their] belief in the existence of the condition sought to be proved,”— Palmer’s ownership of the backpack-and their belief gave rise to an inference the backpack belonged to Palmer. Fed.R.Evid. 801(a) advisory committee note; see also Chavez, 225 Ariz. 442, ¶ 7, 239 P.3d at 763. However, the question was not “intended by [the women] as an assertion,” Ariz. R. Evid. 801(a), and, under the analysis the federal advisory committee proposed, was not subject to exclusion as hearsay. See Fed. R.Evid. 801(a) advisory committee note; Chavez, 225 Ariz. 442, ¶¶ 8, 9, 239 P.3d at 763; see also State v. Ellison, 213 Ariz. 116, ¶¶ 54, 56, 140 P.3d 899, 915 (2006) (testimony about person’s “[n]onverbal conduct is hearsay if it is intended to be an assertion”; officer’s testimony that witness’s “actions and body language were visibly very different” at mention of defendant not intended as assertion and not hearsay); State v. Printz, 125 Ariz. 300, 303, 609 P.2d 570, 573 (1980) (hearsay limited to words or conduct “intended by the actor as an assertion”; police officer’s purchase of television for $299.85 not intended as assertion of value). Similar to Carrillo, 156 Ariz. at 124, 750 P.2d at 882, the women were not “intending to assert anything by making the statement,” but were merely attempting to find the backpack, and thus their statement was “not hearsay at all.” Therefore, the trial court did not err in allowing the testimony over Palmer’s objection.[3]
Insufficient Evidence
¶ 11 Palmer also argues evidence that the backpack containing the methamphetamine belonged to him was nothing more than “conjecture or suspicion” and was insufficient to support the jury’s verdict. “When considering claims of insufficient evidence, we view the evidence in the light most favorable to sustaining the verdict and reverse only if no substantial evidence supports the conviction.’ ” State v. Fimbres, 222 Ariz. 293, 14, 213 P.3d 1020, 1024 (App.2009), quoting State v. Pena, 209 Ariz. 503, ¶ 7, 104 P.3d 873, 875 (App.2005). Substantial evidence is that which “‘reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt.’ ” State v. Stroud, 209 Ariz. 410, ¶ 6, 103 P.3d 912, 913-14 (2005), quoting State v. Hughes, 189 Ariz. 62, 73, 938 P.2d 457, 468 (1997). “Evidence may be direct or circumstantial, but if reasonable minds can differ on inferences to be drawn therefrom, the ease must be submitted to the jury.” State v. Landrigan, 176 Ariz. 1, 4, 859 P.2d 111, 114 (1993) (citation omitted).
¶ 12 Here, B.C.’s testimony that she saw the backpack brought into Palmer’s trauma bay as a normal part of the transfer of a patient’s property from the ambulance that transported him to the hospital is eir- *68 cumstantial evidence from which a jury could infer the backpack belonged to him. Similarly, although Palmer is correct there is no evidence he responded to the statement from the women who came to his trauma bay and removed the backpack, the fact they appeared there and addressed him directly about “his” backpack, and then left with the only backpack present, leads to the reasonable inference that the backpack was his. A reasonable jury could have found this evidence of possession sufficient beyond a reasonable doubt, and substantial evidence thus supports his conviction. See Stroud, 209 Ariz. 410, ¶ 6, 103 P.3d at 913-14.
Disposition
¶ 13 For the foregoing reasons, we affirm Palmer’s conviction and sentence.
CONCURRING: JOSEPH W. HOWARD, Chief Judge.

. Because we determine the evidence was not hearsay, we need not address this argument.

. The version of Rule 801(a) effective January 1, 2012 defines "statement” as "a person’s oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion.” Ariz. R. Evid. 801(a). This stylistic change clarifies that all assertions must be intended as such to constitute a "statement.”

. Because we find no error, we need not address Palmer's argument that any error was not harmless.