NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RICHARD LEE FENDER, *Appellant.*

No. 1 CA-CR 19-0586

FILED 10-22-2020

Appeal from the Superior Court in Mohave County
No. S8015CR201700603
The Honorable Billy K. Sipe, Jr., Judge *Pro Tempore*

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**W I N T H R O P**, Judge:

¶1　　　This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Richard Lee Fender was convicted of one count of transportation of dangerous drugs for sale and one count for possession of dangerous drugs for sale, each a Class 2 felony; he was sentenced to seven years for each count, to be served concurrently. Counsel for Richard Lee Fender has advised this Court of a potential prejudicial error in Fender's conviction of and sentencing for a lesser-included offense, and asks us to search the record for other fundamental error. Fender has filed a supplemental brief *in propria persona*, which we have considered. After reviewing the record, we affirm Fender's conviction and sentence for the transportation for sale offense but vacate his conviction and sentence for the possession for sale offense.

## FACTS[1] AND PROCEDURAL HISTORY

¶2　　　In April 2017, Arizona State Trooper Shed stopped Fender for a suspended vehicle registration in Lake Havasu City. Fender admitted his registration had been suspended, and Trooper Shed noted Fender seemed in a hurry. When Trooper Shed asked if Fender had anything illegal on his person, Fender admitted he had methamphetamine in his boot. Trooper Shed searched Fender and found more than $1,900 in cash, but did not find any drugs. Fender said the drugs must be in his vehicle, and upon searching the vehicle, Trooper Shed found more than six grams of methamphetamine in a pillowcase. As he was searching the vehicle, Trooper Shed heard an alert from a cell phone in plain view and saw a message on the screen that read "I need white." When questioned concerning such message, Fender initially admitted only to using methamphetamine daily and told Trooper Shed he did not have steady employment, but worked side jobs in construction. In light of the large

---

[1]　　　"We view the facts and all reasonable inferences therefrom in the light most favorable to upholding the verdicts." *State v. Tamplin*, 195 Ariz. 246, 246, ¶ 2 (App. 1999).

amount of cash, significant amount of methamphetamine, and the message on the phone, Trooper Shed suspected Fender was also selling methamphetamine. After Trooper Shed arrested Fender and transported him to the police station, Fender explained, "Everybody who uses it also sells it" and "[I'm] not trying to build an empire."

¶3         At Trooper Shed's request, Arizona Department of Safety Detective Creager prepared a search warrant for Fender's cell phone. At trial, Detective Creager testified that he was unable to find a text message that read "I need white" on Fender's phone, but that the message may have been sent through a social messaging application; if so, it would not appear in the phone's data.

¶4         A grand jury indicted Fender on one count of transportation of a dangerous drug for sale, a Class 2 felony; one count of possession of dangerous drugs for sale, a Class 2 felony; one count of possession of narcotic drugs, a Class 4 felony; and one count of possession of dangerous drugs, a Class 4 felony. Fender pleaded not guilty and was held on a $10,000 bond. The court held a hearing regarding the State's plea offer pursuant to *State v. Donald*, 198 Ariz. 406 (App. 2000), and Fender ultimately rejected the offer. The State later moved to dismiss the charges for possession of narcotic drugs and possession of dangerous drugs, and the court dismissed the charges with prejudice.

¶5         Fender borrowed the money to post bail from his brother, who later sought to revoke the bail. But because his brother gave the money directly to Fender and Fender's name was listed on the bond documentation, the court determined it could not release the funds to the brother.

¶6         The court held a two-day jury trial on the remaining two charges, at which the parties stipulated to the amount of methamphetamine recovered from the search of Fender's vehicle. Trooper Shed testified to his encounter with Fender, including Fender's admissions and the phone alert message, and Detective Creager testified as to the street value of methamphetamine in Mohave County and content found on Fender's cell phone. After the State rested its case, Fender moved for a directed verdict under Arizona Rule of Criminal Procedure ("Rule") 20. The court denied the motion, citing the amount of methamphetamine and cash recovered, Trooper Shed's testimony that Fender admitted to using and selling drugs, and the phone message. The State requested a lesser-included offense instruction for simple possession, but Fender, through his attorney, opposed the request to pursue an "all or none" strategy. The court

determined the State presented a "possession for sale type of case" and denied the request to instruct the jury on a lesser-included offense.

¶7        Although he attended the first day of trial and the morning of the second day, Fender failed to return to the courtroom after the lunch recess on the second day. His attorney was unable to contact Fender, and the trial continued in his absence. The eight-person jury found Fender guilty on both counts. Because Fender failed to return to trial, the court ordered his pretrial bond forfeited.

¶8        The superior court later conducted a sentencing hearing in compliance with Fender's constitutional rights and Rule 26. Fender addressed the court at length, contending his attorneys failed to adequately represent his interests, admitting he possessed methamphetamine, and contesting much of Trooper Shed's trial testimony. The court found one aggravating factor, that Fender committed the offense for pecuniary gain. The court also found the following mitigating factors: the amount of methamphetamine; Fender's medical conditions; and Fender's "unresolved drug addiction." For each count, the court sentenced Fender to a mitigated term of seven years in the Arizona Department of Corrections, to be served concurrently. Fender received 295 days of presentence credit for each count. The court also ordered Fender to pay the following: a $1,830 fine; a $20 probation assessment; a $13 assessment fee to the Department of Public Safety; and a $2 victims' rights fee.

**ANALYSIS**

¶9        We review the entire record for reversible error. *State v. Thompson*, 229 Ariz. 43, 45, ¶ 3 (App. 2012). Counsel for Fender has advised of a potential prejudicial error. In his supplemental brief, Fender raises a series of arguments, which we address in turn.

        I.        *Double Jeopardy Violation*

¶10       Counsel for Fender argues the convictions for both possession of dangerous drugs for sale, in violation of Arizona Revised Statutes ("A.R.S.") section 13-3407(A)(2), and transportation of dangerous drugs for sale, in violation of A.R.S. § 13-3407(A)(7), violate Fender's constitutional protection against double jeopardy because the possession for sale charge is a lesser-included offense of transportation for sale. We agree.

¶11       "[W]hen a person is convicted of an offense, the prohibition against double jeopardy protects against further prosecution for that or any lesser-included offense." *State v. Chabolla-Hinojosa*, 192 Ariz. 360, 362-63,

¶ 10 (App. 1998). A lesser-included offense is "composed solely of some but not all of the elements of the greater crime so that it is impossible to have committed the crime charged without having committed the lesser one." *State v. Celaya*, 135 Ariz. 248, 251 (1983). Where a charge for possession of dangerous drugs for sale is incidental to a charge for transportation of dangerous drugs for sale, the possession charge is a lesser-included offense. *See State v. Cheramie*, 218 Ariz. 447, 449, ¶ 11 (2008) ("Given Arizona's broad definition of 'possess,' we cannot conceive how a person can 'transport' drugs without having possession of or dominion or control over them."); *State v. Salcido*, 238 Ariz. 461, 465-66, ¶ 17 (App. 2015); *Chabolla-Hinojosa*, 192 Ariz. at 365, ¶ 21. Fender's convictions on both counts violate the prohibition against double jeopardy and constitute fundamental, prejudicial error. *See Salcido*, 238 Ariz. at 465-66, ¶ 17. We therefore vacate Fender's conviction for possession of dangerous drugs for sale and the seven-year sentence for that conviction.[2]

      II.     *Fender's Supplemental Brief*[3]

**¶12**      We now turn to the arguments raised in Fender's supplemental brief. None of these arguments were properly raised before the superior court, and we review only for fundamental error. *See State v. Bible*, 175 Ariz. 549, 572 (1993). Fundamental error goes "to the foundation of the case [and] takes from the defendant a right essential to his defense, and [is] of such magnitude that the defendant could not possibly have received a fair trial." *State v. Hunter*, 142 Ariz. 88, 90 (1984).

---

[2]      The record reflects a discrepancy between the hearing transcript and the minute entry regarding the presentence credit awarded on the possession of dangerous drugs for sale count. The record reflects the court intended to credit Fender with 295 days for each count, despite the minute entry showing zero days of presentence credit. *See State v. Bowles*, 173 Ariz. 214, 216 (App. 1992). This discrepancy is moot, however, because we vacate the sentence for this count.

[3]      Fender also filed a motion to deem his appeal submitted based on his opening brief and the record, noting the State did not file an answering brief under Rule 31.13. Pursuant to our order filed April 6, 2020, "the filing of an answering brief by [the State] shall await the further order of this Court." Because we did not order the State to file an answering brief, we deny Fender's motion as moot.

### A. *Search and Seizure Violations*

**¶13**        Fender alleges the warrantless search of the container[4] in which Trooper Shed located the methamphetamine went beyond the permissible scope of the initial search, requiring the drugs to be excluded at trial.  But the record indicates Fender consented to a search of his vehicle when he told Trooper Shed the drugs were in his vehicle.  *See Birchfield v. North Dakota*, 136 S. Ct. 2160, 2185 (2016) ("[A] search is reasonable when the subject consents, and . . . consent to a search need not be express but may be fairly inferred from context." (citations omitted)); *see also Tamplin*, 195 Ariz. at 246, ¶ 2.  We therefore reject Fender's reasoning that *Arizona v. Gant*, 556 U.S. 332 (2009), required the exclusion of the methamphetamine evidence.  *Cf. id.* at 343-44 (permitting law enforcement officers to conduct "a search incident to a lawful arrest" where "the offense of arrest [supplies] a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein").

**¶14**        He also argues that by searching the vehicle prior to advising him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Trooper Shed "deprived [Fender] of his . . . right to counsel at such an obvious critical stage."  This is contrary to authority: "In Arizona, that point [in which *Miranda* warnings are required] is said to occur when police have both reasonable grounds to believe that a crime has been committed and reasonable grounds to believe that the person they are questioning is the one who committed it."  *State v. Pettit*, 194 Ariz. 192, 195, ¶ 15 (App. 1998).  Fender's brief reflects Trooper Shed provided *Miranda* warnings after finding the drugs in a search of Fender's vehicle; as such, he has not demonstrated fundamental error.  And to the extent Fender argues the timing of the *Miranda* warnings violated his Sixth Amendment right to counsel, we note this right is generally triggered by an initiation of formal charges, such as an indictment.  *See State v. Sallard*, 247 Ariz. 464, 468, ¶¶ 11, 15 (App. 2019).

**¶15**        Throughout his brief, Fender alludes to a "contrived" or "fabricated" confession but does not identify the alleged statement(s) he is referencing.  Trooper Shed testified that Fender admitted to using methamphetamine, admitted to having methamphetamine on his person and then in his vehicle, and made statements suggesting he also sold methamphetamine.  In the absence of any indication as to which potentially

---

4        At trial, Trooper Shed referred to the container as a "pillowcase."  Fender refers to a "backpack" in his brief.  The discrepancy does not affect our analysis.

incriminating statement—of many—Fender considers inappropriate, we lack sufficient information to review his claim.

### B.     Trooper Shed's Testimony

**¶16**        Fender argues Trooper Shed's testimony about the "I need white" message constituted inadmissible hearsay.  Generally, text messages on a defendant's cell phone asking for drugs do not constitute hearsay if they are offered as "circumstantial evidence that [the defendant] had drugs for sale."  *State v. Chavez*, 225 Ariz. 442, 444, ¶ 9 (App. 2010).  The actual "I need white" text message was not offered as evidence but was presented through Trooper Shed's testimony.    Such testimony regarding communications about prospective drug purchases are treated similarly to the communications themselves.  *See United States v. Rodriguez-Lopez*, 565 F.3d 312, 314-15 (6th Cir. 2009) (cited with approval by *Chavez*, 225 Ariz. at 444, ¶ 9).  Because this type of evidence is not considered hearsay, we find no fundamental error in the admission of the testimony describing the content of the message.

**¶17**        Fender also alleges Trooper Shed committed perjury by testifying that Fender admitting to selling methamphetamine to support his own use and that the message appeared on Fender's phone.  A witness commits perjury by making "[a] false sworn statement in regard to a material issue, believing it to be false."   A.R.S. § 13-2702(A)(1).  Mere inconsistencies in testimony do not constitute perjury, and any inconsistencies go to the witness' credibility, which is resolved by the jury. *See State v. Ferrari*, 112 Ariz. 324, 334 (1975); *State v. Felix*, 234 Ariz. 118, 120-21, ¶¶ 10-11 (App. 2014).  Fender has not demonstrated fundamental error.

**¶18**        Fender contends Trooper Shed should not have been permitted to testify in his uniform.  But he cites no authority prohibiting a law enforcement officer from doing so, and we do not address Trooper Shed's choice of dress at trial any further.  *See State v. Perez*, 233 Ariz. 38, 41, ¶ 10 (App. 2013) (explaining an argument on appeal must be supported by authority and citations to the record).

### C.     Fair Trial

**¶19**        Related to his arguments regarding Trooper Shed's testimony, Fender alleges the assigned prosecutor engaged in misconduct in permitting Trooper Shed to commit "perjury" by submitting testimony about the phone message.  A prosecutorial misconduct claim requires the defendant to establish that (1) misconduct is in fact present and (2) there is a reasonable likelihood the misconduct could have affected the jury's

verdict, denying the defendant a fair trial. *See State v. Anderson*, 210 Ariz. 327, 340, ¶ 45 (2005). We have already determined that the testimony about the phone message was admissible and that Fender has not demonstrated Trooper Shed's testimony constituted perjury. Accordingly, Fender has not satisfied the first condition of a prosecutorial misconduct allegation, and we find no arguable merit to this claim.

**¶20** Fender also alleges ineffective assistance of trial counsel. Such claims "are to be brought in Rule 32 proceedings. Any such claims improvidently raised in a direct appeal . . . will not be addressed by appellate courts regardless of merit." *State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002). Accordingly, we do not consider this claim.

**¶21** After the State rested its case, Fender moved for a directed verdict pursuant to Rule 20, which the court denied. He renews that argument here, this time arguing that because Trooper Shed's testimony provided the only evidence "to tie the 'meth' to Appellant," the State presented "insufficient evidence to convict." We have already determined no fundamental, reversable error arose from Trooper Shed's testimony, so Fender's argument essentially challenges the credibility of Trooper Shed and the weight of the evidence presented at trial. But these considerations belong to the jury, and we do not revisit such matters on review. *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004).

**¶22** Fender argues "[t]here were so many errors in this matter" that the cumulative effect "so deprived Appellant of Due Process of Law that he was irreparably egregiously prejudiced." Fender appears to argue his conviction was the result of the cumulative effect of the alleged prosecutorial misconduct and perceived ineffective assistance of counsel. We have found nothing improper regarding the State's presentation of its case, and we do not on direct appeal address the performance of Fender's counsel. Accordingly, we do not find Fender was denied his due process rights to a fair trial on this ground. *State v. Bocharski*, 218 Ariz. 476, 492, ¶ 75 (2008) ("Absent any finding of misconduct, there can be no cumulative effect of misconduct sufficient to permeate the entire atmosphere of the trial with unfairness.").

**¶23** After Fender failed to return to trial, the superior court forfeited his bond; the court denied Fender's multiple requests to return his bail money. He alleges this constitutes "double punishment" for his convictions—presumably in violation of the Fifth Amendment—and that "keeping his money (a fine) precluded the trial court from sentencing Appellant to prison." We disagree. "The primary purpose of an

appearance bond is to assure a defendant's appearance at the trial or other hearings." *State v. Bonds*, 201 Ariz. 203, 208, ¶ 19 (App. 2001). An appearance bond—and the court's discretionary determination to forfeit all, part, or none of the bond—is a procedure distinct from a trial verdict or related sentencing.

### D. *Pensions and the Fourteenth Amendment*

**¶24** Finally, Fender alleges the trial judge had an improper financial interest in the trial's outcome. Specifically, he argues "ALL Arizona judges receive pecuniary gain from ALL convictions that lead to imprisonment, through the 'Elected Officials And Judges Pension Fund' which is invested in the 'Private Prisons'" that operate in Arizona. His argument relies on *Tumey v. Ohio*, in which the United States Supreme Court held that where a judge personally received a portion of the assessed court costs, such pecuniary interest disqualified him as impartial. 273 U.S. 510, 535 (1927). We disagree that any alleged pension fund investments in corporations operating private prisons constitutes a "direct, personal, substantial pecuniary interest" as to deprive defendants, including Fender, of due process under the Fourteenth Amendment. *See id.* at 523. The relationship between a judge and the financial policies and investment decisions of the pension system administrators is "too remote to warrant a presumption of bias toward conviction in prosecutions before" the judge. *See Ward v. Village of Monroeville*, 409 U.S. 57, 60-61 (1972) (describing *Dugan v. Ohio*, 277 U.S. 61 (1928)).

**¶25** We have read and considered counsel's brief and Fender's supplemental brief, and we have fully reviewed the record for reversible error. *See Leon*, 104 Ariz. at 300. Save for the double jeopardy violation discussed above, we find none. So far as the record reveals, counsel represented Fender at all stages of the proceedings, and the sentence imposed was within the statutory guidelines. *See* A.R.S. § 13-3407(A)(7), (B)(7), (E). We decline to order any further briefing.

**¶26** Upon the filing of this decision, defense counsel shall inform Fender of the status of the appeal and of his future options. Counsel has no further obligations unless, on review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Fender shall have thirty days from the date of this decision to proceed, if he desires, with an *in propria persona* motion for reconsideration or petition for review.

## CONCLUSION

¶27 For the foregoing reasons, we affirm Fender's conviction and sentence for transportation of dangerous drugs for sale and the court-ordered fees and assessments, but we vacate his conviction and sentence for possession of dangerous drugs for sale.



AMY M. WOOD • Clerk of the Court
FILED:    AA